IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| ROBERT HALTER AND CHRISTINA HALTER | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:23-cv-00225-KC |
| | § | |
| NATIONWIDE MUTUAL INSURANCE COMPANY | § | |
| *Defendant.* | § | |

### DEFENDANT NATIONWIDE MUTUAL INSURANCE COMPANY'S FIRST AMENDED ANSWER AND DEFENSES TO PLAINTIFFS' ORIGINAL PETITION

Defendant Nationwide Mutual Insurance Company ("Nationwide" or "Defendant"), files this First Amended Answer and Defenses to Plaintiffs Robert Halter and Christina Halter's ("Plaintiffs") Original Petition, and would respectfully show as follows:

### I.    DEFENDANT NATIONWIDE MUTUAL INSURANCE COMPANY'S ANSWER TO PLAINTIFFS' ORIGINAL PETITION

Nationwide makes the following admissions and denials to the claims of Plaintiffs as authorized by Federal Rule of Civil Procedure 8(b):

### DISCOVERY CONTROL PLAN LEVEL

1.    Nationwide denies that discovery in this case should be conducted under the Texas Rules of Civil Procedure. Discovery submits discovery in this matter should be conducted pursuant to the Federal Rules of Civil Procedure and this Court's Scheduling Order.

### PARTIES AND SERVICE

2.    Upon information and belief, Nationwide admits that Plaintiff is an individual residing and domiciled in El Paso County, Texas.



**DEFENDANT'S EXHIBIT A**

3.      Nationwide is without sufficient knowledge to form a belief as to the allegations in Paragraph 3 of Plaintiffs' Original Petition, and therefore denies the same.

4.      Upon information and belief, Nationwide admits that Plaintiff is an individual residing and domiciled in El Paso County, Texas.

5.      Nationwide is without sufficient knowledge to form a belief as to the allegations in Paragraph 5 of Plaintiffs' Original Petition, and therefore denies the same.

6.      Nationwide admits the allegations in Paragraph 6 of Plaintiffs' Original Petition. Nationwide further admits that it has appeared and answered in this lawsuit.

## JURISDICTION AND VENUE

7.      Paragraph 7 of Plaintiffs' Original Petition addresses subject matter jurisdiction in Texas state court and does not require a response from Nationwide. To the extent a response is required, Nationwide admits that the United States District Court for the Western District, El Paso Division, has jurisdiction over this case.

8.      Paragraph 8 of Plaintiffs' Original Petition is intended to comply with the Texas Rules of Civil Procedure and requires no response from Nationwide. To the extent a response is required, Nationwide admits that the United States District Court for the Western District of Texas, El Paso Division, has jurisdiction over this case. Nationwide denies that Plaintiffs are entitled to the relief requested in Paragraph 8 of Plaintiffs' Original Petition.

9.      Nationwide denies that it is a Texas resident. Answering further, Nationwide admits that the United States District Court for the Western District of Texas, El Paso Division, has jurisdiction over this case.

10.     Paragraph 10 of Plaintiffs' Original Petition addresses venue in Texas state court and does not require a response from Nationwide. To the extent a response is required,

Nationwide admits that venue is proper in the United States District Court for the Western District, El Paso Division.

## FACTUAL ALLEGATIONS

11.     Nationwide admits that it issued Policy No. 78 42 HR 160108 to Robert J. Halter and Christina D. Montoya-Halter for the policy period October 23, 2020 to October 23, 2021 (the "Policy"), which is a written contract. Nationwide admits that Plaintiffs are both named insureds under the Policy. Nationwide admits that 3945 Las Vegas Dr., El Paso, TX 79902-1728 (the "Property") is an insured property under the Policy. Nationwide otherwise denies the remaining allegations in Paragraph 11 of Plaintiffs' Original Petition.

## SPECIFIC PERFORMANCE FOR
## BREACH OF CONTRACT

12.     Paragraph 12 of Plaintiffs' Original Petition contains a reference to the foregoing paragraphs for incorporation by reference and does not require a response by Nationwide. To the extent that a response is required, Nationwide reasserts its admissions and denials that were set forth in the foregoing paragraphs of this First Amended Answer.

13.     Nationwide denies the allegations set forth in Paragraph 13 of Plaintiffs' Original Petition.

14.     Nationwide denies the allegations set forth in Paragraph 14 of Plaintiffs' Original Petition.

15.     Nationwide denies the allegations set forth in Paragraph 15 of Plaintiffs' Original Petition.

16.     Nationwide denies the allegations set forth in Paragraph 16 of Plaintiffs' Original Petition.

17.    Nationwide denies the allegations set forth in Paragraph 17 of Plaintiffs' Original Petition.

## INSURER'S TORT OF BAD FAITH

18.    Paragraph 18 of Plaintiffs' Original Petition contains a reference to the foregoing paragraphs for incorporation by reference and does not require a response by Nationwide. To the extent that a response is required, Nationwide reasserts its admissions and denials that were set forth in the foregoing paragraphs of this First Amended Answer.

19.    Paragraph 19 of Plaintiffs' Original Petition contains a statement of law which does not require a response from Nationwide. To the extent a response is required, Nationwide denies the same.

20.    Nationwide denies the allegations set forth in Paragraph 20 of Plaintiffs' Original Petition.

## DAMAGES

21.    Nationwide denies the allegations set forth in Paragraph 21 of Plaintiffs' Original Petition and denies that Plaintiffs are entitled to the relief requested.

## OTHER RELIEF REQUESTED

22.    Nationwide denies that Plaintiffs are entitled to the relief sought in Paragraph 22 of Plaintiffs' Original Petition.

## ATTORNEY'S FEES

23.    Nationwide denies that Plaintiffs are entitled to the relief sought in Paragraph 23 of Plaintiffs' Original Petition.

## ALTERNATIVE ALLEGATIONS

24.     Paragraph 24 of Plaintiffs' Original Petition contains statements concerning compliance with specific rules under the Texas Rules of Civil Procedure, and does not require a response from Nationwide. To the extent a response is required, Nationwide denies the same.

## PLAINTIFFS HEREBY DEMAND TRIAL BY JURY

25.     Paragraph 25 of Plaintiffs' Original Petition is Plaintiffs' jury demand and does not require a response. To the extent a response is required, Nationwide joins Plaintiffs' request for a jury trial.

## PRAYER

26.     Nationwide denies the allegations set forth in the Prayer in the Prayer set forth in Plaintiffs' Original Petition. Nationwide further denies that Plaintiffs are entitled to any of the damages or relief sought by Plaintiff in the Prayer of Plaintiffs' Original Petition.

## II.  DEFENDANT NATIONWIDE MUTUAL INSURANCE COMPANY'S DEFENSES

### First Defense
### Policy Provisions

27.     Plaintiffs cannot recover, in whole or in part, on his breach of contract claim, and consequently on any of the other causes of action alleged in its Original Petition, because the Policy contains exclusions and provisions negating coverage, in whole or in part, for the damages alleged by Plaintiffs. Nationwide's contractual obligations are determined by the terms, conditions, limitations, and exclusions contained in the Policy. Nationwide relies on such terms, conditions, limitations, and exclusions in defense of the claims asserted against it. Potentially applicable policy provisions include, but are not limited to:

### HOMEOWNER POLICY DECLARATIONS

***

| | |
|---|---|
| **Policy Number:** | **Policyholder:** |
| 78 42 HR 160108 | **(Named Insured)** |

ROBERT J HALTER &
CHRISTINA D
MONTOYA-HALTER
3945 LAS VEGAS DR
EL PASO TX 79902-1728

**Policy Period From:**
OCT 23, 2020 to OCT 23, 2021
***

**Residence Premises Information:**

| | | |
|---|---|---|
| 3945 Las Vegas Dr | Purchased: 12/2007 | FD El Paso |
| El Paso | Built: 1964 | El Paso FS8 |
| TX 79902-1728 | Construction: Masonry Veneer | Protection Class 1 |
| | Roof: Composite Shingle | Miles from Fire Dept: 001 |
| | Supplemental Heating? Y | |
| | 004 Occupants Dwelling | |
| | One Family | |

***

# SECTION I

| Property Coverages | Limits Of Liability | |
|---|---|---|
| | | **Deductible:**    $1,000 |
| | | ALL PERILS |
| COVERAGE-A-DWELLING | $355,000 | |
| COVERAGE-B-OTHER STRUCTURES | $35,500 | In case of a loss under Section I, we cover only that part of each loss over the deductible stated. |
| COVERAGE-C-PERSONAL PROPERTY | $266,250 | |
| COVERAGE-D-LOSS OF USE | ALS* | |
| *ACTUAL LOSS SUSTAINED PAYMENT NOT TO EXCEED 24 MONTHS | | |

***

# OTHER COVERAGES APPLICABLE

See Policy or Endorsements for details regarding Other Coverages that apply to your policy.

| Other Coverages | Limits of Liability |
|---|---|
| Biological Deterioration or Damage | $10,000 |
| *** | |
| Building Ordinance or Law | 10% |
| Inflation Protection | Applies |
| *** | *** |
| Loss Assessment | $10,000 |
| Water Backup Deductible | $1,000 |
| Water Damage | 100% of Cov A |
| Tools | $2,500 |

***

# AGREEMENT

We will provide the insurance described in this policy, which includes the Declarations and attached endorsements or schedules, in return for the premiums and fees, and compliance with all applicable provisions of this policy.

\*\*\*

Any part of this policy that may be in conflict with statutes of the state in which this policy is issued is hereby amended to conform.

\*\*\*

**DEFINITIONS**

A. "We", "us" and "our" refer to the Company providing this insurance.

B. Throughout this policy, "you" and "your refer to:

    1. The "named insured" shown in the Declarations;

\*\*\*

C. In addition, certain words and phrases are defined as follows:

    1. "Actual Cash Value"

    [Modified by endorsement – see below]

\*\*\*

    3. "Biological deterioration or damage" means damage or decomposition, breakdown and/or decay of manmade or natural material due to the presence of fungi, algae, lichens, slime, mold, bacteria, wet or dry rot and any by-products of these organisms, however produced.

\*\*\*

    8. "Insured" means:

        a. You and residents of your household who are:

            (1) Your relatives; or

            (2) Other persons under the age of 21 and in your care or the care of a resident of your household who is your relative;

\*\*\*

    9. "Insured location" means:

        a. The "residence premises";

\*\*\*

    11. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

\*\*\*

        b. "Property damage".

\*\*\*

    13. "Property damage" means physical injury to, destruction of, or loss of use of tangible property.

\*\*\*

    15. "Residence premises" means:

        a. The one-family dwelling where you reside;

\*\*\*

        on the inception date of the policy period shown in the Declarations and which is shown as the "residence premises" in the Declarations.

        "Residence premises" also includes other structures and grounds at that location.

**SECTION I – PROPERTY COVERAGES**

**A. Coverage A – Dwelling**

    1. We cover:

a. The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling; and

b. Materials and supplies located on or next to the "residence premises" used to construct, alter or repair the dwelling or other structures on the "residence premises".

2. We do not cover land, including land on which the dwelling is located, or the replacement, rebuilding, restoration, stabilization or value of such land.

\*\*\*

**4. Property Not Covered**
We do not cover:

\*\*\*

k. Water or steam; or

\*\*\*

**E. Additional Coverages**
These additional coverages are subject to the policy deductible except as noted. In no event will the deductible be applied more than once to any one loss.

\*\*\*

**2. Reasonable Repairs**
a. We will pay the reasonable cost incurred by you for the necessary measures taken solely to protect covered property that is damaged by a Peril Insured Against from further damage.

b. If the measures taken involve repair to other damaged property, we will only pay if that property is covered under this policy and the damage is caused by a Peril Insured Against. This coverage does not:

(1) Increase the limit of liability that applies to the covered property; or
(2) Relieve you of your duties, in case of a loss to covered property, described in C.4 under Section I – Conditions.

\*\*\*

**7. Loss Assessment**
a. We will pay up to the Loss Assessment coverage limit shown on the Declarations for your share of loss assessment charged during the policy period against you, as owner or tenant of the "residence premises", by a corporation or association of property owners. The assessment must be made as a result of direct loss to property, owned by all members collectively, of the type that would be covered by this policy if owned by you, caused by a Peril Insured Against under Coverage A¸ other than:

\*\*\*

Our total limit for Loss Assessment coverage under this policy shall not exceed the limit shown on the Declarations, regardless of the number of assessments. Our total limit for Loss Assessment coverage under this policy shall also not exceed the limit shown on the Declarations, regardless of whether the loss is covered under Section I, Section II or both Section I and Section II of the policy. We will only apply one deductible, per unit, to the total amount of any one loss to the property described above, regardless of the number of assessments.

\*\*\*

    c. Paragraph Q. Policy Period under Section I – Conditions does not apply to this coverage.

    This coverage is additional insurance.

\*\*\*

**8. Collapse**

    a. The coverage provided under this Additional Coverage – Collapse applies only to an abrupt collapse.

    b. For purposes of this Additional Coverage – Collapse, abrupt collapse means an abrupt falling own or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purposes.

    c. This Additional Coverage – Collapse does not apply to:

        (1) A building or any part of a building that is in danger of falling down or caving in;

        (2) A part of a building that is standing, even if it has separated from another part of the building; or

        (3) A building or any part of a building that is standing, even if it shows evidence cracking, bulging, sagging, bending, leaning, settling, shrinkage, or expansion.

\*\*\*

**11. Ordinance Or Law**

    a. The amount of ordinance or law coverage is shown on the Declarations. It is a percentage of the limit of liability that applies to Coverage A – Dwelling and provides coverage for the increased costs of construction you incur due to the enforcement of any ordinance or law which requires or regulates:

        (1) The construction, demolition, remodeling, renovation or repair of that part of a covered building or other structure damaged by a Peril Insured Against.

\*\*\*

    c. We do not cover:

        (1) The loss in value to any covered building or other structure due to the requirements of any ordinance or law;

\*\*\*

**SECTION I – PERILS INSURED AGAINST**

**A. Coverage A – Dwelling and Coverage B – Other Structures**

    1. We insure against direct physical loss to property described in Coverages A and B.

    2. We do not insure, however, for loss:

        a. Excluded under Section I – Exclusions;

        b. Involving collapse, including any of the following conditions of property or any part of the property:

\*\*\*

        (2) Loss of structural integrity, including separation of parts f the property or property in danger of falling down or caving in; or

(3) Any cracking, building, sagging, bending, leaning, settling, shrinkage or expansion as such condition relates to (1) and (2) above;

Except as provided in E.8 Collapse under Section I – Property Coverages; or

c. Caused by:

\*\*\*

(5) Continuous or repeated seepage or leakage of water, steam or moisture, or presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years from a plumbing, heating, air conditioning or automatic fire protective sprinkler system or a household appliance that results in deterioration or rust.

Continuous or repeated seepage or leakage of water from within or around any shower stall, shower tub, tub installation or other plumbing fixture, including its walls, ceilings or floors, is also excluded.

For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout, or similar fixtures or equipment.

(6) Any of the following:

(a) Wear and tear, marring, deterioration;

(b) Mechanical breakdown, latent defect, inherent vice or any quality in property that causes it do damage or destroy itself;

(c) Smog, rust or other corrosion or dry rot.

\*\*\*

(f) Settling, shrinking, bulging or expansion, including resultant cracking, of bulkheads, pavements, patios, footings, foundations walls, floors, roofs, or ceilings;

(g) Birds, rodents or insects;

\*\*\*

(k) Mismatch of color between undamaged material and new material used to replace old, weathered or oxidized damaged material; or

(l) Mismatch between undamaged material and new material used to repair or replace material due to outdated, obsolete or discontinued products.

**Exception to c.(6)**

Unless the loss is otherwise excluded, we cover loss to property covered under Coverage A or B resulting from an accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance on the "residence premises". This includes the cost to tear out and replace any part of the building, or other structure, on the "residence premises", but only when necessary to repair the system or appliance. However, such tear our and replacement coverage only applies to other structures if the water or steam causes actual damage to a building on the "residence premises".

We do not cover loss to the system or appliance from which the water or steam escaped.

\*\*\*

Section I – Exclusion A.3 Water, Paragraphs a. and c. that apply to surface water and water below the surface of the ground do not apply to loss by water covered under c.(6) above.

\*\*\*

## SECTION I – EXCLUSIONS

A. We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

**1. Ordinance Or Law**

Ordinance Or Law means any ordinance or law:

a. Requiring or regulating the construction, demolition, remodeling, renovation or repair of property, including removal of any resulting debris. This exclusion **A.1.a** does not apply to the amount of coverage that may be provided for in **E.11** Ordinance Or Law under Section **I** – Property Coverages;

**2. Earth Movement**

Earth Movement means:

a. Earthquake, including land shock waves or tremors before, during or after a volcanic eruption;

b. Landslide, mudslide or mudflow;

c. Subsidence or sinkhole; or

d. Any other earth movement including earth sinking, rising or shifting.

This Exclusion A.2. applies regardless of whether any of the above, in A.2.a. through A.2.d., is caused by an act of nature or is otherwise caused.

\*\*\*

**3. Water**

This means:

a. . . . surface water . . .

b. Water which:

(1) Backs up through sewers or drains from outside the dwelling's plumbing system; or

(2) Overflows or is otherwise discharged from a sump pump, related equipment, or other system designed to remove subsurface water from the foundation area.

c. Water below the surface of the ground, including water which exerts pressure on, or seeps, leaks or flows through a building, sidewalk, driveway, patio, foundation, swimming pool or other structure;

d. Waterborne material carried or otherwise moved by any of the water referred to in A.3.a through A.3.d of this exclusion.

This exclusion A.3 applies regardless of whether any of the above in A.3.a through A.3.d. is caused by an act of nature or is otherwise caused.

\*\*\*

**5. Neglect**

Neglect means neglect of an "insured" to use all reasonable means to save and preserve property at and after the time of a loss.

\*\*\*

**10. Diminution In Value**

Diminution In Value includes, but is not limited to, damages for any perceived or actual reduction in the market value of any property.

**11. Increased Hazard**

Increased Hazard means any loss occurring while hazard is increased by a means within the control and knowledge of an "insured".

**12. "Biological Deterioration Or Damage"**

[Modified by endorsement – see below]

\*\*\*

B. We do not insure for loss to property described in Coverages A and B caused by any of the following. However, any ensuing loss to property described in Coverages A and B not precluded by any other provision in this policy is covered.

1. Weather conditions. However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in A. above to produce the loss.

2. Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

3. Faulty, inadequate or defective:

    a.   Planning, zoning, development, surveying, siting;

    b.   Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction, backfilling;

    c.   Materials used in repair, construction, renovation or remodeling; or

    d.   Maintenance;

    of part or all of any property whether on or off the "residence premises".

## SECTION I – CONDITIONS

**A. Insurable Interest and Limit of Liability**

[Modified by endorsement – see below]

**B. Deductible**

Unless otherwise noted in this policy, the following deductible provision applies:

With respect to any one loss:

1. Subject to the applicable limit of liability, we will pay only that part of the total of all loss payable that exceeds the deductible amount shown in the Declarations.

2. If two or more deductibles under this policy apply to the loss, only the highest deductible amount will apply.

3. Deductibles may be stated as a specific dollar amount or as a percentage of the limit of liability for the covered property.

**C. Duties After Loss**

[Modified by endorsement – see below]

**D. Loss Settlement**

In condition D., the terms "cost to repair or replace" and "replacement cost" do not include the increased costs incurred to comply with the enforcement of any ordinance or law, except to the

extent that coverage for these increased costs is provided in E.11. Ordinance of Law under Section I – Property Coverages. Covered property losses are settled as follows:
\*\*\*

    2. Buildings under Coverage A or B at replacement cost without deduction for depreciation subject to the following:

        a. We will pay the cost to repair or replace, after application of the deductible and without deduction for depreciation, but not more than the least of the following amounts:

            (1) The limit of liability under this policy that applies to the building;

            (2) The replacement cost of that part of the building damaged for like construction and use on the same premises; or

            (3) The necessary amount actually spent to repair or replace the damaged building.

        b. We will pay no more than the "actual cash value" of the damage until actual repair or replacement is complete, unless the cost to repair or replace the damage is both:

            (1) Less than 5% of the amount of insurance in this policy on the building; and

            (2) Less than $2,500.

        c. [Modified by endorsement – see below]
\*\*\*

**F. Appraisal**
[Modified by endorsement - see below]
\*\*\*

**H. Suit Against Us**
[Modified by endorsement - see below]
\*\*\*

**J. Loss Payment**
[Modified by endorsement - see below]
\*\*\*

**Q. Policy Period**
This policy applies only to loss which occurs during the policy period.
\*\*\*

<b>LIMITED WATER BACK-UP AND SUMP DISCHARGE OR OVERFLOW<br>COVERAGE<br>(This is not Flood Insurance)</b>

Coverage is subject to all terms and conditions of the policy except as changed by this endorsement.

**A. Section I – Property Coverages**
    **E. Additional Coverages**
    The following coverage is added:
    **Limited Water Back-up and Sump Discharge or Overflow Coverage**
    We will pay up to the Limit of Liability shown on the Declarations for direct physical loss, not caused by the negligence of an "insured", to property covered under Section I caused by water, or waterborne material, which:

> 1. Backs up through sewers or drains from outside the dwelling's plumbing system; or
> 2. Overflows or is discharged from a(n):
>> a. Sump, sump pump, sump pump well, or related equipment; or
>> b. Other system designed to remove subsurface water or waterborne material from the foundation area;
>> even if such overflow or discharge results from mechanical breakdown or power failure. This coverage does not apply to direct physical loss of the sump pump, related equipment or other system, which is caused by mechanical breakdown or power failure.

\*\*\*

## C. Section I – Exclusions

With respect to the Limited Water Back-up and Sump Discharge or Overflow Coverage provided under this endorsement:

> 1. The **Water** Exclusion is replaced by the following:
>
> **Water**
>
> This means water which backs up through sewers or drains, or overflows or is discharged from a sump, sump pump, sump pump well, or related equipment or other system designed to remove subsurface water or waterborne material from the foundation area, as a direct or indirect result of:
>> a. . . .  surface water . . .
>> b. Water below the surface of the ground, including water which exerts pressure on, or seeps, leaks or flows through a building, sidewalk, driveway, patio, foundation, swimming pool or other structure; or

\*\*\*

> This exclusion applies regardless of whether any of the above in Paragraphs C.1.a. through C.1.c. is caused by an act of nature, an act of man, or is otherwise caused.

\*\*\*

## SPECIAL PROVISIONS – TEXAS

Coverage is subject to all terms and conditions of the policy except as changed by this endorsement.

## DEFINITIONS

Paragraph C.1. "Actual Cash Value" is replaced by the following:

> 1. "Actual Cash Value" means the amount it would cost to repair or replace covered property with material of like kind and quality, less allowance for depreciation.

\*\*\*

## SECTION I – PROPERTY COVERAGES

Paragraph E.11 Ordinance Or Law in Form H 00 03 adds the following . . . :

>> d. If the insured property is located in an area which is eligible for coverage through the Texas Windstorm Insurance Association, the coverage described above also applies to the increased cost you incur due to the repair, replacement or demolition required for the dwelling to comply with the building specifications contained in the Texas Windstorm Insurance Association's plan of operation.

\*\*\*

**SECTION I – CONDITIONS**

Paragraph **A. Insurable Interest and Limit of Liability** is replaced by the following:

**A. Insurable Interest And Limit Of Liability**

    1. Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

        a. To an "insured" for more than the amount of such "insured's" interest at the time of loss; or

        b. For more than the applicable limit of liability

\*\*\*

Paragraph **C. Duties After Loss** is replaced by the following:

**C. Duties After Loss**

    **1. Your Duties After Loss**

    In case of a loss to covered property, we have no duty to provide coverage under this Policy if the failure to comply with the following duties is prejudicial to us. These duties must be performed either by you, an "insured" seeking coverage or a representative of either:

        a. Give prompt notice to us or our agent. . . .

        \*\*\*

        d. Protect the property from further damage. If repairs to the property are required, you must:

            (1) Make reasonable and necessary repairs to protect the property; and

            (2) Keep an accurate record or repair expenses;

        e. Cooperate with us in the investigation of a claim;

        \*\*\*

        g. As often as we reasonably require:

            (1) Show the damaged property;

            (2) Provided us with records and documents we request and permit us to makes copies; and

            (3) Submit to examination under oath, while not in the presence of another "insured", and sign the same. A parent or guardian may be present with a minor during any interview or examination;

        h. Send to us, within 91 days after our request, your signed, sworn proof of loss on a standard form supplied by us.

\*\*\*

Paragraph **D.2.c. Loss Settlement** . . . is replaced by the following:

        c. If you receive a settlement under this policy for loss or damage to buildings on an "actual cash value" basis, you may then make an additional claim for payment on a replacement cost basis provided:

            (1) Repair or replacement is completed within one year of the date of the loss, unless you request in writing that this time limit be extended for an additional 180 days;

            (2) Repair or replacement is evidence by the original of the replacement receipt, invoice or bill; and

            (3) You have not reached the applicable limit of liability under this policy.

\*\*\*

Paragraph **F. Appraisal** is replaced by the following:

**F. Appraisal**

If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the judicial district or county where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their difference to the umpire. A decision agreed by any two will set the amount of loss

Each party will:

1. Pay its own appraiser; and

2. Bear the other expenses of the appraisal and umpire equally, except that any fees for expert witnesses or attorneys will be paid by the party who hires them.

Neither the umpire nor the appraisers will have a financial interest that is conditioned on the outcome of the specific matter for which they are called to serve.

This is not a provision providing for or requiring arbitration.

The appraisers and umpire are only authorized to determine the "actual cash value", replacement cost, or cost to repair the property that is the subject of the claim. They are not authorized to determine coverage, exclusions, conditions, forfeiture provisions, conditions precedent or any other contractual issues that may exist between you and us. The appraisal award cannot be used by either you or us in any proceeding concerning coverage, exclusions, forfeiture provisions, conditions precedent or other contractual issues. However, once contractual liability is admitted or determined, the appraisal award is binding upon you and us. This appraisal process and authority granted to the appraisers and the umpire can only be expanded or modified by written mutual consent signed by you and us.

Paragraph **H. Suit Against Us** is replaced by the following:

**H. Suit Against Us**

1. Except as provided in Paragraph 2., no suit or action can be brought against us unless there has been full compliance with all of the terms under Section I of this Policy. Action must be brought against us within two years and one day from the date the cause of action first accrues. A cause of action accrues on the date of the initial breach of our contractual duties as alleged in the action.

2. With respect to suits brought in connection with claims for loss caused by windstorm or hail in the catastrophe area, as defined by the Texas Insurance Code:

No action can be brought against us unless there has been compliance with all of the terms of this Policy. The action must be brought before the earlier of the following:

    a.  Two years and one day from the date we accept or reject the claim; or

    b.  Three years and one day from the date of the loss that is the subject of the claim.

Paragraph **J. Loss Payment** is replaced by the following:

**J. Loss Payment**

We will adjust all losses with you. We will pay you unless some other person is named in the Policy or is legally entitled to receive payment. . . .

\*\*\*

28.     The assertion of any specific provision of the Policy in this Answer is not intended as a waiver or abandonment of other applicable provisions of the Policy. The Policy in its entirety is asserted and incorporated herein by reference.

**Second Defense**
**No Breach of Policy**

29.     Plaintiffs' claim has been properly investigated, adjusted, and evaluated. There has been no breach of the Policy, thereby precluding recovery of damages pursuant to any contractual and extra-contractual theory of liability, including but not limited to violation(s) of the Texas Insurance Code and Texas Deceptive Trade Practices Act.

**Third Defense**
**Failure of Conditions Precedent**

30.     Plaintiffs have failed to comply with one or more provisions of the Policy and, therefore, are precluded from bringing suit to enforce the Policy. The Policy expressly states:

> [N]o suit or action can be brought against us unless there has been full compliance with all of the terms under Section I of this Policy. Action must be brought against us within two years and one day from the date the cause of action first accrues. A cause of action accrues on the date of the initial breach of our contractual duties as alleged in the action.

31.     Plaintiffs in this instance have failed to fulfill their duties after a loss as required by the Policy, including but not limited to the following duties:

> a. Give prompt notice to us or our agent. . . .
> \*\*\*
> d. Protect the property from further damage. If repairs to the property are required, you must:
>    (1) Make reasonable and necessary repairs to protect the property; and
>    (2) Keep an accurate record or repair expenses;
> e. Cooperate with us in the investigation of a claim;
> \*\*\*
> g. As often as we reasonably require:

> (1) Show the damaged property;
> (2) Provided us with records and documents we request and permit us to makes copies; and
> (3) Submit to examination under oath, while not in the presence of another "insured", and sign the same. A parent or guardian may be present with a minor during any interview or examination;

\*\*\*

32.     Accordingly, because Plaintiffs have not met all conditions precedent to filing this lawsuit, Plaintiffs are contractually precluded from bringing suit against Nationwide.

**Fourth Defense**
**Failure to Mitigate/Contribution**

33.     Plaintiffs are barred from any recovery from Nationwide, in whole or in part, due to Plaintiffs' own fault, acts and/or omissions, negligence, breach of duty, violation of statute, its failure to mitigate the alleged damages, its contribution to its own alleged damages, and/or breach of contract or that of its agents, representatives, or employees. This includes, but is not limited to, Plaintiffs' failure to properly maintain the Property's foundation, walls, ceilings, and flooring.

**Fifth Defense**
**Lack of Coverage Precludes Extra-Contractual Liability**

34.     The existence of coverage for an insurance claim is necessary to establish the basis of claims for violations of the Texas Insurance Code and common law bad faith. Because Plaintiffs' allegations are generally based upon Nationwide's alleged failure to timely pay policy benefits, the absence of coverage for the allegedly unpaid amounts of the underlying insurance claim precludes Plaintiffs' extra-contractual claims against Nationwide as a matter of law.

**Sixth Defense**
**Loss Settlement Provisions**

35.     Nationwide relies on the loss settlement provisions set forth in the relevant insurance policy limiting loss payments as set forth in the Policy.

**Seventh Defense**
**Limits of Liability**

36.     Any recovery by Plaintiffs is subject to the applicable dwelling limits set forth previously. Additionally, Plaintiffs may not recover more than their financial interest in the Property.

**Eighth Defense**
**Deductible**

37.     To the extent any damage to the covered property is determined by the factfinder to be the result of the water leak as alleged in Plaintiffs' Original Petition, which is denied, Plaintiffs' recovery is subject to the Policy's $1,000 deductible as shown in the Declarations of the Policy.

**Ninth Defense**
**Due Process and Equal Protection**

38.     To the extent Plaintiffs seek punitive damages, Nationwide invokes its right under the due process clause of the Fifth Amendment of the United States Constitution as applied to the states through the Fourteenth Amendment of the United States Constitution. Nationwide affirmatively pleads that Plaintiffs' pleading of punitive and/or exemplary damages violates the due process clauses of the Fifth and Fourteenth Amendments.

39.     To the extent Plaintiffs seek punitive damages, Nationwide asserts that such request should be denied because it violates the equal protection rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, the provisions of the Eighth

Amendment to the United States Constitution, and the Constitution of the State of Texas, Article I, Sections 13 and 19.

**Tenth Defense**
**Statutory Limitations for Punitive Damages**

40.    Any recovery by Plaintiffs for punitive damages would be subject to the limitations on liabilities and damages contained in Chapter 41 of the Texas Civil Practice and Remedies Code, as well as all other statutory damage caps provided by law.

**Eleventh Defense**
**Punitive Damage Limitation**

41.    With respect to Plaintiffs' claims for damages, any award of punitive damages must be limited to the greater of: (1) two times the amount of economic damages plus an amount equal to any non-economic damages found by the jury, not to exceed $750,000; or (2) two times the amount of economic damages plus $200,000, pursuant to the statutory mandates of Texas Civil Practice & Remedies Code §§ 41.002 – 41.009.

**Twelfth Defense**
**Non-Segregation of Damages**

42.    Nationwide asserts that Plaintiffs have failed to segregate damages caused by covered damage to the Property under the Policy and causes of loss to the Property uncovered under the Policy, including, but not limited to unrepaired damages to the Property remaining from an April 27, 2020 storm event, which pre-dated Plaintiffs' ownership of the Property and the Policy period.

**Thirteenth Defense**
**Offset and Credit**

43.    Plaintiffs' damages, if any, must be offset by the amount of applicable Policy deductibles, as well as a credit for indemnity amounts paid to or on behalf of Plaintiffs.

### III.    PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendant Nationwide Mutual Insurance Company respectfully prays that Plaintiffs take nothing, that Nationwide be awarded its reasonable and necessary attorneys' fees and costs, and for such other and further relief to which Nationwide may be justly entitled.

Respectfully submitted,

*/s/ Patrick M. Kemp*
Patrick M. Kemp
Texas Bar No. 24043751
pkemp@smsm.com
Robert G. Wall
Texas Bar No. 24072411
rwall@smsm.com
Segal McCambridge Singer & Mahoney
100 Congress Ave., Ste. 800
Austin, Texas 78701
(512) 476-7834
(512) 476-7832 – Facsimile

**ATTORNEYS FOR DEFENDANT
NATIONWIDE MUTUAL INSURANCE
COMPANY**

### CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing instrument has been served electronically via CM/ECF this 14th day of September, 2023 to:

Gabriel S. Perez
Gabriel S. Perez Law Firm
718 Myrtle Ave.
El Paso, Texas 79901
gabriel@gabrielsperezlaw.com

*/s/ Patrick M. Kemp*
Patrick M. Kemp